UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>v.<br>**WILLIE SPEAKS**<br>Defendant. | Criminal No.  25-217 (JDB) |

**MEMORANDUM OPINION AND ORDER**

A grand jury indicted Willie Speaks for unlawfully possessing a firearm and ammunition as a person convicted of a crime punishable by more than one year in prison, in violation of 18 U.S.C. § 922(g)(1) and D.C. Code § 22-4503(a)(1).  Indictment [ECF No. 8].  It also indicted him for possessing a firearm without a serial number—also known as a "ghost gun"—in violation of D.C. Code § 22-4514(a), (c)(1).  Id.; see also D.C. Code § 7-2501.01(9B)(A) (defining "ghost gun").  Speaks contends that the Court must dismiss these charges because the laws the government alleges he violated are unconstitutional under New York State Rifle & Pistol Association v. Bruen, 597 U.S. 1 (2022).  See Def.'s Mot. [ECF No. 17].

Three years prior to the Supreme Court's decision in Bruen, the D.C. Circuit determined that laws disarming persons convicted of crimes punishable by more than one year of imprisonment are presumptively constitutional because people convicted of such crimes are generally not protected by the Second Amendment.  See Medina v. Whitaker, 913 F.3d 152, 160 (D.C. Cir. 2019).  Since Bruen, this Court and at least eight other judges in this district have considered whether Medina remains good law.  All have concluded that it does.  See, e.g., United States v. Richardson, Crim. A. No. 23-200-1, 2024 WL 402948, at *3 (D.D.C. Feb. 2, 2024); United States v. Sargent, Crim. A. No. 24-447 (D.D.C. May 21, 2025) [ECF No. 29] at 8 n.2

1

(collecting cases). This Court finds no reason to hold otherwise here, foreclosing Speaks's challenges to 18 U.S.C. § 922(g)(1) and D.C. Code § 22-4503(a)(1). Because D.C.'s ghost gun law is also constitutional, the Court **DENIES** Speaks's motion to dismiss the indictment.

## BACKGROUND

In the early hours of July 20, 2025, Metropolitan Police Department officers observed two men looking into unoccupied cars parked on a residential street in the District's Shaw neighborhood. Gov't's Opp'n to Def.'s Mot. [ECF No. 18] at 2–3. The men fled at the sight of the police. Id. at 3. The MPD officers gave chase and apprehended Willie Speaks. Id. They also recovered a loaded firearm without a serial number from the front of a residence Speaks ran past. Id. at 3, 6. Surveillance footage collected from the home showed a man resembling Speaks reaching into his bag and tossing an item towards the house as he sprinted by. Id. at 3–4.

The government charged Speaks with unlawful possession of a weapon by a person convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C.§ 922(g)(1) and D.C. Code § 22-4503(a)(1), as well as possessing a ghost gun, in violation of D.C. Code § 22-4514(a), (c)(1). See Indictment. Speaks was previously convicted of unlawfully possessing a loaded handgun on his person and sentenced to three years of imprisonment in Maryland. Gov't's Opp'n to Def.'s Mot. at 7–8. He was also convicted of two misdemeanor drug offenses in D.C. Id. at 8. Speaks was on probation in both jurisdictions at the time of the conduct alleged here. Id.

## LEGAL STANDARD

A defendant in a criminal case may move to dismiss an indictment before trial for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Included in the defense of failure to state an offense is the claim that the statute creating the offense charged is unconstitutional. United States

2

v. Eshetu, 863 F.3d 946, 952 (D.C. Cir. 2017), vacated in part on other grounds, 898 F.3d 36 (D.C. Cir. 2018); see also United States v. Nordean, 579 F. Supp. 3d 28, 40 (D.D.C. 2021).

## ANALYSIS

### I.  SECOND AMENDMENT FRAMEWORK

In Medina v. Whitaker, the D.C. Circuit held that convicted felons do not possess the right to bear arms.  913 F.3d at 160.  To reach this conclusion, the court "look[ed] to tradition and history" to understand the scope of the Second Amendment right.  Id. at 158.  Finding the historical record replete with examples of both violent and nonviolent founding-era felons punished with estate forfeiture, death, or both, the D.C. Circuit concluded that the founding-era public generally would not have understood felons to fall within the ambit of the Second Amendment.  Id.

The D.C. Circuit also considered whether convicted felons could raise as-applied challenges to their disarmament based on postconviction changes in their circumstances.  The court held that they could not because "[a] prohibition on firearm ownership . . . is a reasonable consequence of a felony conviction that the legislature is entitled to impose without undertaking the painstaking case-by-case assessment of a felon's potential rehabilitation."  Id. at 160–61.  The Court left open, however, the possibility that a felon might "show that his crime was so minor or regulatory that he did not forfeit his right to bear arms by committing it . . . ."  Id. at 160.

Three years later, the Supreme Court announced a new two-step history and tradition test for assessing the constitutionality of firearm regulations.  Bruen, 597 U.S. at 24.  This test differed from prior approaches in that it eschewed interest balancing.  Id. at 18–19.  At step one, courts assess whether the Second Amendment covers an individual's conduct.  Id. at 17.  To do so, courts must examine both the plain text of the Second Amendment and historical understandings of the right it protects.  See id. at 20 (relying on history to confirm the Court's textual interpretation

"because it has always been widely understood that the Second Amendment codified a pre-existing right" (citation modified)).

Where "the government can prove that the regulated conduct falls beyond the Amendment's original scope, then the analysis can stop there; the regulated activity is categorically unprotected." Id. at 18 (citation modified); see also id. at 21 (emphasizing that the Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" (quoting District of Columbia v. Heller, 554 U.S. 570, 626 (2008))). But should the regulated conduct fall within the ambit of the Second Amendment, the conduct is presumptively protected and analysis of the firearm regulation must continue. Id. at 24.

At Bruen's second step, the government must justify the challenged law by demonstrating that it comports with American history and tradition. Id. at 22. The government may do so by identifying analogous historical laws that burdened the right in a similar way, for similar reasons, and to a similar extent. See id. at 29 (identifying two metrics for courts' analogical analyses—"how and why the regulations burden a law-abiding citizen's right to armed self-defense"). Bruen's analogical reasoning does not demand a "historical twin," however. Id. at 30. Indeed, the Supreme Court has reiterated this point, reversing a Fifth Circuit decision for "read[ing] Bruen to require a 'historical twin' rather than a 'historical analogue.'" See United States v. Rahimi, 602 U.S. 680, 701 (2024) (quoting Bruen, 597 U.S. at 30).

## II.    SPEAKS'S CHALLENGE TO 18 U.S.C. § 922(g)(1) AND D.C. CODE § 22-4503(a)(1)

To prevail on his challenge to § 922(g)(1) and its D.C. criminal code equivalent, Speaks must show that (1) this Court is no longer bound by the D.C. Circuit's decision in Medina, or (2) his predicate offense—unlawfully carrying a loaded handgun on his person—falls within the narrow window Medina left open for as-applied challenges. Speaks fails to carry either burden.

4

## A. *Bruen* Did Not Overrule the D.C. Circuit's Decision in *Medina*

Medina forecloses Speaks's facial challenges to 18 U.S.C. § 922(g)(1) and D.C. Code § 22-4503(a)(1). The D.C. Circuit determined in Medina that felon disarmament statutes are facially constitutional because in 1791 the public would generally regard someone convicted of a felony as outside the scope of persons with Second Amendment rights. See Medina, 913 F.3d at 158. And "district judges . . . are obligated to follow controlling circuit precedent until either [the circuit], sitting en banc, or the Supreme Court, overrule it." United States v. Torres, 115 F.3d 1033, 1036 (D.C. Cir. 1997).

To be sure, intervening law from the Supreme Court may "effectively" overrule circuit precedent if it "eviscerates" the precedent, rendering the cases "incompatible." Perry v. MSPB, 829 F.3d 760, 764 (D.C. Cir. 2016), rev'd on other grounds, 582 U.S. 420 (2017). But contrary to Speaks's contention, Bruen did not overrule Medina's methodology. See Richardson, 2024 WL 402948, at *3. In Medina, the D.C. Circuit first looked to American history and tradition to understand the scope of the Second Amendment right, the mode of constitutional inquiry that Bruen demands. Id.; see also Bruen, 597 U.S. at 20 (explaining that history guides analysis at Bruen's first step).

And while Speaks objects to Medina's reference to the virtuous citizen theory, a theory that the Supreme Court has since rejected, the D.C. Circuit expressly declined to base its holding on that theory. See 913 F.3d at 159 (not accepting the virtuous citizen theory "outright"). So this Court cannot say that subsequent Supreme Court law "eviscerated" Medina. Nor is the categorical conclusion the Medina court reached "incompatible" with subsequent Supreme Court decisions. The Supreme Court clarified in Rahimi that such categorical determinations can be consistent with Bruen's methodology. See Rahimi, 602 U.S. at 698 (remarking that the Court's opinion should

5

not be read to suggest that categorical disarmament of "persons thought by a legislature to present a special danger of misuse" violates the Second Amendment").[1]

What's more, neither Bruen nor Rahimi undermined Medina's ultimate holding—that it is presumptively constitutional to disarm convicted felons. See Bruen, 597 U.S. at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating Heller's statement that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are "presumptively lawful"); Rahimi, 602 U.S. at 699 (same); see also United States v. Hunt, 123 F.4th 697, 703 (4th Cir. 2024), cert. denied, 145 S. Ct. 2756 (2025) ("Far from abandoning Heller's language about 'longstanding' and 'presumptively lawful' restrictions on felons possessing firearms, the Supreme Court has repeatedly reaffirmed its applicability.").

This Court therefore rejects Speaks's contention that Bruen overruled Medina and holds that § 922(g)(1) and D.C. Code § 22-4503(a)(1) are facially constitutional. Cf. United States v. Dubois, 139 F.4th 887, 893 (11th Cir. 2025) ("[B]ecause the Court made it clear in Bruen that its holding was 'in keeping with Heller' . . . Bruen could not have clearly abrogated our precedent upholding section 922(g)(1)" (quoting Bruen, 597 U.S. at 17)).

**B. Speaks Does Not Fall Within *Medina*'s Narrow Space for As-Applied Challenges**

Still, Medina left open the possibility that some people convicted of "minor or regulatory" crimes could challenge felon-in-possession statutes as applied to them. 913 F.3d at 160. Speaks contends that even if Medina remains good law, his prior conviction was so minor that it is unconstitutional to disarm him. See Def.'s Mot. at 19–20.

---

[1] The Court is also unpersuaded by Speaks's citation to the Third Circuit's decision in Range v. Att'y Gen. U.S., 69 F.4th 96, 106 (3d Cir. 2023), cert. granted, judgment vacated sub nom. Garland v. Range, 144 S. Ct. 2706 (2024). In that case, the Third Circuit found Medina unpersuasive after Bruen but distinguished its decision from the decisions of district courts "bound to follow their circuits' precedent." Id. And in any event, the Supreme Court vacated Range after it refined Bruen's history and tradition test in Rahimi. See Garland, 144 S. Ct. 2706.

The Court disagrees. In Medina, the D.C. Circuit set a stringent standard for "minor, regulatory" crimes, holding that misrepresentation of one's income on a mortgage application was sufficiently serious to permanently exclude the plaintiff from Second Amendment protection. 913 F.3d at 154, 160. If anything, Speaks's prior conviction is more serious than the Medina plaintiff's fraud conviction. As courts have noted throughout history, unlawfully carrying a loaded handgun presents a real danger of violence. See United States v. Gassaway, Crim. No. 21-550, 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); Epperson v. United States, 371 F.2d 956, 958 (D.C. Cir. 1967) ("The crime of carrying, without a license, a pistol or other deadly or dangerous weapon capable of being concealed is a serious matter in a troubled metropolitan area."); State v. Huntly, 25 N.C. 418, 420–22 (1843) ("[G]oing about armed with unusual and dangerous weapons, to the terror of the people, . . . lead[s] almost necessarily to actual violence."). This Court similarly declines to downplay the severity of a conviction for unlawfully carrying a loaded deadly weapon and holds that 18 U.S.C. § 922(g)(1) and D.C. Code § 22-4503(a)(1) are constitutional as applied to Speaks.

### III.   THE GHOST GUN STATUTE

Speaks also challenges D.C.'s prohibition on ghost guns, D.C. Code § 22-4514(a), (c)(1). But recall that Bruen's first step requires courts to confirm that the Second Amendment protects the defendant and his alleged conduct. See 597 U.S. at 18. If it does not, "the analysis can stop there . . . ." Id. Here, Speaks's challenge to D.C.'s ghost gun statute fails Bruen's first step two times over.

First, Speaks was previously convicted of a crime that excludes him from "the people" that the Second Amendment protects. As a result, he cannot challenge D.C.'s ghost gun law on Second Amendment grounds.

Second, even if Speaks himself could be protected by the Second Amendment, his alleged conduct—possessing a ghost gun—cannot. The Second Amendment right is "not a right to keep and carry any weapon whatsoever . . . ." Rahimi, 602 U.S. at 691 (quoting Heller, 554 U.S. at 626). Rather, the right to bear arms extends only to weapons in common use for lawful purposes. See Bruen, 597 U.S. at 47; Heller, 554 U.S. at 625. So weapons, like short-barreled shotguns, that are "not typically possessed by law-abiding citizens for lawful purposes" are unprotected. Heller, 554 U.S. at 625.

The primary advantage of a gun without a serial number is its utility in illicit activity. See United States v. Price, 111 F.4th 392, 406 (4th Cir. 2024), cert. denied, 145 S. Ct. 1891 (agreeing that unserialized firearms are "preferable only to those seeking to use them for illicit activities"). This reality is borne out in contemporary data. As the Supreme Court acknowledged in Bondi v. VanDerStok, "police departments around the Nation have confronted an explosion of crimes involving . . . 'ghost guns.'" 604 U.S. 458, 464 (2025) (citation modified). This Court thus concludes that the Second Amendment does not protect firearms without serial numbers and rejects Speaks's challenge to D.C. Code § 22-4514(a), (c)(1). See Price, 111 F.4th at 408 (holding that "firearms with obliterated serial numbers are not in common use for a lawful purpose and they therefore fall outside the scope of the Second Amendment's protection").

## CONCLUSION

For these reasons, it is hereby **ORDERED** that [17] Speaks's motion to dismiss counts one through three of the Indictment is **DENIED**.

8

/s/
JOHN D. BATES
United States District Judge

Dated: December 19, 2025